IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JAMES GRASS,**

    **Plaintiff,**

v.                                                   **Civil Action No. 1:10cv52**
                                                                       **(Judge Keeley)**

**DAVID PROCTOR, DO,**
**WEXFORD HEALTH SOURCES, Inc.,**
**ADRIAN HOKE, Warden,**
**TRISTIAN TENNEY, RN,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action on April 1, 2010. In the complaint, the plaintiff makes various claims regarding the violation of his 8th Amendments rights with respect to medical care that he is receiving, or more accurately, not receiving at the Huttonsville Correctional Center ("HCC"). On April 5, 2010, the plaintiff was granted leave to proceed *in forma pauperis*.

On April 12, 2010, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered, and Summonses were issued for the defendants.

On April 26, 2010, Warden Hoke filed a Motion to Dismiss with a Memorandum in support. Because the plaintiff is proceeding without counsel in this case, the Court issued a Roseboro Notice on April 28, 2010, advising the plaintiff of his right to file a response to the defendant's motion. On May 4, 2010, the plaintiff filed a response, and on May 12, 2010, Warden Hoke filed a reply. On May 5, 2010, Dr. Proctor, Tristian Tenney, and Wexford Health Sources, Inc., ("Wexford") also filed

a Motion to Dismiss with a Memorandum in support. A second Roseboro Notice was issued on May 6, 2010. On July 22, 2010, the plaintiff responded to the Motion to Dismiss filed by Dr. Proctor, Tristian Tenney and Wexford. This case is therefore before the undersigned for a Report and Recommendation on the Motions to Dismiss as well as the plaintiff's three motions to amend his complaint as well as his several motions for a preliminary injunction and/or emergency injunction.

## II. Claims of the Parties

In his complaint, the plaintiff asserts that he suffers from a skin condition called "PFB" which he maintains is exacerbated by the daily close shaving which is required by West Virginia Division of Corrections' policy. The plaintiff further alleges that for four and one half years, Dr. Proctor had issued him a "no-shave slip". The plaintiff indicates that after he was transferred to the St. Marys Correctional Center ("SMCC") and then returned to the HCC, Dr. Proctor refused to renew his no-shave slip. The plaintiff alleges that because of Dr. Proctor's negligence, he has been forced to shave daily and his skin condition has been severely exacerbated. In addition, the plaintiff alleges that Dr. Proctor has been neglecting his psoriasis and severe dandruff by refusing to renew the plaintiff's order for T-Gel shampoo and also refusing to renew his orders for lotion, Hydrocortisone cream and clobetasol cream to treat his skin conditions. Finally, the plaintiff alleges that due to his skin condition, he requires liquid Dial soap to use in the shower. However, the plaintiff maintains that Dr. Proctor refuses to re-order the soap, and because of Dr. Proctor's willful negligence, he has had to use the state soap provided by HCC and, consequently, he has broken out in a severe itchy rash.

As relief, the plaintiff seeks injunctive relief as well as compensatory and punitive damages.

In support of his motion to dismiss, Warden Hoke asserts that the complaint pertains to medical decisions made by Dr. Proctor. To the extent that the plaintiff complains about the grievance

process, Warden Hoke argues that without more, the complaint fails to state a claim against him.

In support of their motion to dismiss, Wexford contends that it is not a person within the meaning of 42 U.S.C. § 1983 and is not subject to liability under the theory of respondeat superior. Tristian Tenney responds that there are no medical allegations against him, but rather, the sole allegation is in his role of medical administrator who denied plaintiff's grievance. Accordingly, [1]Tristian Tenney contends that the complaint fails to state a claim against him. Dr. Proctor responds that the plaintiff's complaint fails to meet the standard for setting forth a claim under the Eighth Amendment

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

---

[1]The undersigned notes that in a letter to the Clerk, dated May 26, 2010, the plaintiff indicated that he moved to dismiss Tristian Tenney, Warden Adrian Hoke, and Wexford Health Sources from the case and pursue David Proctor as the sole defendant. (Doc. 48, p.2). The undersigned also notes that in his response filed on July 22, 2010, the plaintiff indicates that he consents to the dismissal of defendants Tristian Tenney and Wexford Health Sources, Inc. However, he requests that they be dismissed without prejudice. (Doc. 66). Because the undersigned is unsure that the plaintiff understands the import of his statements, and because the dismissals should be with prejudice, a discussion of the merits of the plaintiff's complaint against these defendants has been included.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than

encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV. Analysis

### A. Warden Hoke

In order to establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The plaintiff does not allege any personal involvement with his medical care by Warden Hoke. Instead, he appears to allege only that Warden Hoke refused to help in the administrative grievance procedure. To the extent that the plaintiff may be asserting that Warden Hoke was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003). Moreover, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982); Orum v. Haines, 68 F. Supp.2d 726 (D.D. W.Va. 1999), or the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v.

Stroud, 13 F.3d 791, 799 (4th Cir.), *cert. denied,* 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

The plaintiff makes no allegations in his complaint which reveals the presence of the required elements for supervisory liability against Warden Hoke. Further, the undersigned notes that the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Thus, Warden Fox could rely on the opinion of Dr. Proctor as to whether the plaintiff needed a No Shave Permit, or additional medications, lotions, or shampoo. Consequently, the undersigned finds that the plaintiff has failed to state a claim against Warden Hoke, and the complaint against him should be dismissed.

**B. Tristan Tenney, R.N.**

Like his complaint against, Warden Hoke, the plaintiff makes no claim of any personal involvement by Mr. Tenney in his medical care. Instead, the plaintiff simply notes that Mr. Tenney, who is the Health Services Administrator, refused to help him and denied his grievance. Again such a claim is without merit because that is not the type of personal involvement required to state a claim. See Paige supra.

**C. Wexford Health Sources, Inc.**

The plaintiff alleges that the defendant(s) have deprived him of his rights and raises a claim under 42 U.S.C. § 1983 which provides as follows:

7

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982). However, it is clear that Wexford is not a "person" for purposes of 42 U.S.C. § 1983, and is not a proper defendant in this action.

### D. Dr. Proctor

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326,

347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[2]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997)

Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

The record before the Court[3] establishes that in September of 2009, the plaintiff was transferred from HCC to SMCC, where he was denied a No Shave Permit by that facility's physician. Although no specific date is provided, it is clear that by March of 2010, the plaintiff had been transferred back to the HCC.[4] Although it would appear that the plaintiff had been issued a No Shave Permit at the HCC in 2007, which was apparently still in effect when he was transferred to the SMCC, when he returned to the HCC, Dr. Proctor refused to issue him another permit.

In an affidavit submitted by Dr. Proctor, he acknowledges that in the past, the plaintiff has qualified for a No Shave Permit because of the condition of his neck in the form of a rash. However, Dr. Proctor notes that the plaintiff currently has no skin condition, including Pseudofolliculitis Barbe, which would prevent daily shaving. Dr. Proctor also notes that the plaintiff was evaluated on March 19, 2010, and had no need for shampoos, lotions or a shave slip. He had no rash, Pseudofolliculitis, dandruff or any other condition requiring the items he requested. Moreover, Dr. Proctor indicates that since March 19, 2010, he has examined the plaintiff on several occasions, and he still has no medical need for the shampoos, lotions or shave slip he has demanded. Dr. Proctor states that "[s]kin is not a static organ. Rashes can come and go; treatment for rashes start and finish. When [the plaintiff] possesses a shave pass in the past, it was because there was rash there, at that time, which qualified [him] for a shave pass. There is no such condition at this time. (Doc. 71, p. 6).

---

[3] In preparing this Report and Recommendation, the undersigned has reviewed the plaintiff's similar complaint filed against personnel at the St. Mary's Correctional Center. Civil Action No. 1:09cv160.

[4] The plaintiff initiated the grievance process regarding the shave permit at the HCC on March 3, 2010. (Doc. 1, p. 36).

The opinions and findings by Dr. Proctor correspond with those made by Dr. Winters in the plaintiff's civil action regarding his care at SMCC. The record in that case reveals that the plaintiff was first seen by Dr. Winter on September 28, 2009. The Progress Notes attached to the Affidavit of Dr. Winter reflect that she saw the plaintiff on nine occasions between September 28, 2009, and November 30, 2009.[5] With respect to the plaintiff's allegation that he is entitled to a No Shave Permit, Dr. Winter clearly states that he does not have pseudofolliculitis (PFB). Moreover, Dr. Winter provides a detailed explanation as to why he does not have this condition. (Doc. 61-3, p. 8). In addition, the materials submitted by Dr. Winter indicate that she saw the plaintiff on November 24, 2009, at which time he requested T-Gel shampoo for his itchy scalp, steroid cream for his itchy skin, and Excedrin rather than Tylenol for chronic daily headaches. However, her examination revealed that the plaintiff's scalp was healthy, with no flaking or lesions of any kind. Moreover, although he had minimally dry skin, there was no flaking. Therefore, Dr. Winter determined that there was no special lotion necessary and no need for T-Gel shampoo.

The sum of this evidence indicates that the plaintiff currently does not suffer from a serious medical condition. Moreover, nothing in the record or in the plaintiff's complaint establishes any facts sufficient to support a finding that Dr. Proctor was deliberately indifferent to his medical needs, no matter how minor they might have been, and accordingly, the plaintiff's complaint as it relates to Dr. Proctor should be dismissed for failure to state a claim.

### V. Miscellaneous Motions

**A. Motions to Amend Complaint**

**1. Jim Rubenstein**

On April 21, 2010, the plaintiff filed a motion to add Jim Rubenstein, Commissioner of the

---

[5]Dr. Winter was no longer employed at SMCC after November 30, 2009.

Division of Corrections as a defendant to this action. In support of his motion, the plaintiff alleges that as the Commissioner of the DOC, all the defendants fall under his supervision making him liable for the constitutional violations allegedly made by the originally named defendants.

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Here, a review of the file shows that although summonses had been issued, no responsive pleading has been served. Thus, the plaintiff's Motion to add Commissioner Rubenstein should be granted as a matter of course. However, for the following reasons, service is not required, and Commission Rubenstein should be dismissed as a defendant.

Clearly, the plaintiff names Jim Rubenstein in his capacity as the Commissioner of the West Virginia Division of Corrections. However, the plaintiff does not allege that he was personally involved in the violation of his constitutional rights. Instead, plaintiff names him only in his official capacity.

Because the plaintiff fails to allege any personal involvement on the part of Commissioner Rubenstein and does not make any allegation which reveal the presence of the required elements for supervisory liability,[6] plaintiff fails to state a claim against Rubenstein, and he should be dismissed as a defendant in this action.

**2. The Religious Land Use and Institutionalized Persons Act ("RLUIPA")**

On September 22, 2010, the plaintiff filed a motion seeking to add a claim under RLUIPA. Because responsive pleadings have already been filed, the plaintiff can only amend with leave of

---

[6] See the standard for supervisory liability set forth in the discussion under Warden Hoke.

court. Although leave freely should be freely given when justice requires, the undersigned recommends that the motion be denied for the reasons set forth below.

RLUIPA guarantees prisoners greater freedom to engage in religious conduct than does the First Amendment. The Act prohibits the government from imposing a "substantial burden on the religious exercise" of a prisoner, unless the defendant can show that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." Cutter v. Wilkinson, 544 U.S. 709. 717 (2005) (upholding act's constitutionality; 42 U.S.C. § 2000cc-1. "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Id. at 718.

In the plaintiff's motion, other than providing that he wants to add a claim under RLUIPA, he provides absolutely no allegation as to how his right to exercise his religious rights have been violated. In fact, the plaintiff does not state to what religion he belongs.

Furthermore, under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, **or any other federal law**, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). (emphasis added). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[7] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth at 741) (emphasis added).

---

[7] Porter v. Nussle, 534 U.S. 516, 524 (2002).

Moreover, in Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 126 S.Ct. at 2387 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 2393.

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. However, that decision does not abrogate the fact that an action under 42 U.S.C. § 1983 is subject to exhaustion of administrative remedies as required by the PLRA. Nor does it abrogate well-established Fourth Circuit precedent which allows the Court to summarily dismiss a complaint in which the failure to exhaust is clearly evident. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005).

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

In this particular case, it is clear that the plaintiff exhausted his administrative remedies with

respect to his allegation that he has a medical need for a No Shave Permit. (Doc. 1, p. 40). That exhaustion was completed on March 25, 2010, and the plaintiff filed his complaint on April 1, 2010. However, no where in his administrative grievances does he raise the issue of a religious basis for his need of a No Shave Pass. Therefore, even if he has since exhausted his administrative remedies on that issue, he may not now amend his complaint to add the RLUIPA claim.[8]

### 3. Additional Claims Against Dr. Proctor

On October 19, 2010, the plaintiff filed yet another motion for leave to file an amended complaint. He now seeks to add a retaliation claim against Dr. Proctor and specifically alleges that Dr. Proctor has taken him off all "Keep on Person medications" and forced him to go to pill line to get his Asthma Inhalers. Although it appears that the plaintiff has exhausted his administrative remedies regarding this issue, he did not do so until October 8, 2010 (Doc.73-1), more than six months after the complaint in this matter was filed. As noted above, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. Accordingly, the plaintiff's motion should be denied without prejudice to his right to file a new action asserting this claim.

### B. Motions for Injunctive Relief

The plaintiff has filed five motions for injunctive relief, beginning on April 9, 2010, and most recently on June 24, 2010. In the first motion (Doc. 10), he seeks a temporary restraining order excusing him from the daily shaving requirements of the HCC, and alleging that because he required to shave, he has open sores placing him at increased risk of contracting a staph infection. In the second motion (Doc. 25), he seeks preliminary injunction ordering the defendants to be restrained and

---

[8] As noted previously, because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter supra. Under Rule 15(c) of the Federal Rules of Civil Procedure, an amendment relates back to the date of the original pleading when: (B) the amendment asserts a claim...that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading....

prohibited from enforcing the DOC shaving policy until this matter is decided. In the third motion, he seeks a preliminary injunction retraining the defendants from transferring him from the HCC.[9] In the fourth motion (Doc. 46), he indicates that on May 20, 2010, he received a copy of a Disciplinary Report charging him with Disciplinary Rule violation 1.25 "compromising an employee". The charging employee was Dr. Proctor, and the plaintiff maintains that the disciplinary action was illegal retaliation against him for filing the instant complaint. The plaintiff alleges that he will suffer irreparable harm due to this action because he could be placed in Disciplinary Segregation for Sixty (60) days, lose up to two (2) years good time, loose his Parole date, and loose all of his privileges for sixty (60) days. Among other things, the plaintiff seeks an Order prohibiting the HCC Hearing Officer from proceeding with the Disciplinary hearing and an Order that the Disciplinary Hearing and the relevant Disciplinary Report be dismissed. In the fifth and final motion (Doc. 65), the plaintiff simply submit a copy of his fourth motion, writes Amended at the top and crosses out his request that an Order issue prohibiting the Hearing Officer from proceeding with the Disciplinary Hearing and for an Order that the Disciplinary hearing and the relevant Disciplinary Report be dismissed. The plaintiff leaves as his sole request an Order prohibiting any defendant in this case, and an DOC employees from harassing him in any way, shape, or form during the pendency of this civil action.

    The Supreme Court of the United States explained the relevant test for granting a preliminary injunction in <u>Winter v. Natural Resources Defense Council, Inc.</u>, 129 S. Ct. 365, 374-76 (2008). A plaintiff must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor,

---

[9]The plaintiff indicates that from experience, he knows that "when you file a lawsuit they try to send you to another institution that way they can claim my complaint is 'moot' and ge my complaint dismissed. [t]hey also do this to evade the Court[']s Review of my Complaint. (Doc. 31).

and (4) that an injunction is in the public interest." See also Real Truth About Obama, Inc. V. Federal Elections Comm'n, 575 F.3d 342 (4th Cir. 2009).

Without specifically reviewing the other factors, the plaintiff claims for a preliminary injunction clearly fail to satisfy the first factor because (1) the undersigned has determined that the plaintiff's complaint is due to be dismissed for failure to state a claim and (2) the decision to transfer an inmate is wholly within the discretion of the Bureau of Prisons. Meachum v. Fano, 427 U.S. 215 (1976).

## V. Recommendation

For the reasons stated, the undersigned recommends that:

(1) the plaintiff's Motion to Amend (Doc. 26) be **GRANTED**, but that the new defendant, Commissioner Rubenstein be dismissed;

(2) The plaintiff's Motions for Leave to file Amended Complaint (Doc. 69 and 73) be **DENIED WITHOUT PREJUDICE**;

(3) the plaintiff's Motions for Preliminary Injunctions (Docs. 10, 27, 31, 46, 65) be **DENIED**;

(4) the Motion to Dismiss by Adrian Hoke (Doc. 28) be **GRANTED**;

(5) the Motion to Dismiss by David Proctor, DO, Tristian Tenney, Wexford Health Sources, Inc. (Doc. 34) be **GRANTED;** and

(6) the plaintiff's complaint be **DENIED AND DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States

District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: October 20, 2010.

        /s/ James E. Seibert
        JAMES E. SEIBERT
        UNITED STATES MAGISTRATE JUDGE